UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOHNNY JOHNSON, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 3:09-CV-317<br>(PHILLIPS/GUYTON) |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and Defendant's Motion for Summary Judgment [Doc. 15]. Plaintiff Johnny Johnson, Jr. ("Plaintiff"), seeks judicial review of the decision of Administrative Law Judge ("ALJ") Robert L. Erwin denying him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On May 17, 2006, Plaintiff filed an application for disability insurance benefits ("DIB"). [Tr. 9]. On May 15, 2006, Plaintiff protectively filed an application for supplemental security income ("SSI"). [Tr. 9]. On both applications, Plaintiff alleged a period of disability which began on July 31, 2005. [Tr. 9]. After his applications were denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On April 23, 2008, a hearing was held before ALJ Robert L. Erwin to review the determination of Plaintiff's claim. [Tr. 20-39]. On July 22, 2008, the

ALJ found that Plaintiff was not under a disability from July 31, 2005, through the date of the decision. [Tr. 9-16]. On July 22, 2008, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 6-8]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

I.  **ALJ FINDINGS**

   The ALJ made the following findings:

   1.   The claimant met the insured status requirements of the Social Security Act through September 30, 2011.

   2.   The claimant has not engaged in substantial gainful activity since July 31, 2005, the alleged onset date. It is noted that the Criminal Injuries Compensation Fund reimbursed the claimant for lost income from work through December 6, 2007, for a total of $28,755.25. Even though the income the claimant received from the Criminal Injuries Compensation Fund reimbursed the claimant for lost wages that occurred as a result of a criminal act, in this case a DUI, it does not represent substantial gainful activity as defined in the regulations. The claimant did no 'substantial' or 'gainful' activity as defined in the Social Security Regulations. While the income the claimant received from the Criminal Injuries Compensation Fund was given in an effort to compensate the claimant for lost wages that occurred as the result of a criminal act, they do not constitute "wages" reflective of engagement in substantial gainful activity. The claimant did no work during this period of time that was either 'substantial' or 'gainful'. Rather, the claimant received the income from the Criminal Injuries Compensation Fund as a "Special Condition" for lost wages as the result of a criminal act (20 CFR 1573(c)). The "Special condition" may be the result of sheltered workshop employment, or 'work' performed while the claimant is a patient in the hospital. In the claimant's case, the 'work' that represents the income paid to the claimant from the Criminal Injuries Compensation Fund closely resembles the 'work' the regulation describes as done by a patient in a hospital, *i.e, there is no actual 'substantial' or 'gainful' activity performed by the claimant* (20 CFR 404.1520(b), and 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

   3.   The claimant has the following "severe" combination of impairments: a history of multiple trauma sustained in a motor vehicle accident, which included an open left

2

femur fracture and a subsequent wound infection with MRSA, a left acetabular (hip) fracture, and gastric perforations and intestinal injuries that required multiple abdominal surgeries that included a partial gastrectomy, colostomy, and a large ventral hernia closure with mesh (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404. Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except climbing, stooping, bending, crouching, crawling, and kneeling are limited to "occasionally"; he may stand /walk a total of 2 hours during an 8 hour workday but only 30 minutes at one time; he may sit 6 hours total during an 8 hour workday but only 1 hour at a time; and he is limited to jobs that only require dealing with simple, 1-2 step tasks and instructions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 1, 1982 and was 22 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a special education high school diploma and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), and 404.1566, 416.960(c), and 416.966).

11. The claimant was not under a disability, as defined in the Social Security Act, from July 31, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 11-15].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering

> from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection . . . simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d

7

1230 (6th Cir. 1971)).

## IV.  ANALYSIS

Plaintiff raises one argument on appeal: he contends that the ALJ erred by finding at step two of the disability determination process that he had no "severe" mental impairments. [Doc. 12 at 6]. Plaintiff argues that this finding was incorrect and unsupported by the record. Plaintiff asserts that he does suffer from a severe mental impairment: "mental retardation."[2] Plaintiff argues that the ALJ ignored both his "testimony regarding a history of special education" and his school records corroborating his testimony. [Doc. 12 at 7]. Plaintiff concludes that the ALJ's failure to consider his history of special education resulted in an incorrect finding that his only "severe" impairments were physical impairments related to a motor vehicle accident. [Doc. 12 at 7].

In response, the Commissioner contends that Plaintiff failed to produce evidence demonstrating that he was mentally retarded, [Doc. 16 at 9], or that "his allegedly severely impaired intellectual functioning" affected his ability to work, [Doc. 16 at 14]. The Commissioner argues that the evidence offered by Plaintiff showed that he "did *not* have significant subaverage general functioning or deficits in adaptive functioning consistent with a diagnosis of mental retardation." [Doc. 16 at 9 (emphasis original)]. The Commissioner further argues that "[n]one of the school psychologists or special education teams that evaluated Plaintiff thought that he was mentally retarded." [Doc. 16 at 9]. The Commissioner also points out that "Plaintiff's post-high school activities as well as the observations of non-psychological medical staff support the assessment that

---

[2] Plaintiff asserts that he has an unspecified mental impairment that meets or medically equals the definition of "mental retardation" contained in 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05(C). [Doc. 12 at 6-8].

Plaintiff was not mentally retarded." [Doc. 16 at 11]. The Commissioner concludes that the ALJ's finding that Plaintiff had no severe mental impairments was reasonable and supported by substantial evidence. [Doc. 16 at 14].

At step two of the sequential disability determination process an ALJ must examine the "medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has no severe impairments, then disability will be denied. See id. A severe impairment is an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment is not severe if it is "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p (07/02/96), 1996 WL 374181, at *1. "Basic work activities" related to intellectual functioning include: (1) capacities for seeing, hearing, and speaking; (2) understanding, carrying out, and remembering simple instructions; (3) use of judgment; (4) responding appropriately to supervision, co-workers and usual work situations; and (5) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

In Higgs v. Bowen, the Court of Appeals for the Sixth Circuit explained that "[t]he step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process." 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). However, as a claimant bears the burden of proof at step two, Walters, 127 F.3d at 529, it is his responsibility to produce or point to *some* evidence that indicates that an alleged impairment impacts his ability to perform basic work activities. Such evidence could take many forms. For example, evidence that a claimant with an alleged impairment fails to "meet production standards" and cannot "carry out basic instructions" at his job might indicate that the alleged impairment

9

significantly limits his ability to perform basic work activities. See Farris v. Sec'y of Health & Human Servs., 773 F.3d 85, 90 (6th Cir. 1985).

In this case, the Court finds that the ALJ's determination that Plaintiff did not have a severe mental impairment as defined by 20 C.F.R. § 404.1520(c) was reasonable and supported by substantial evidence. Plaintiff did not produce or point to any evidence that his purported "mental retardation" impacted his performance of basic work activities. Plaintiff is correct that middle school special education evaluators assessed him at a "functionally delayed" level on May 14, 1996. [Tr. 396, 419]. But Plaintiff failed to meaningfully connect this fourteen-year-old evaluation to his ability to perform basic work activities.

Plaintiff is also correct that his most recent IQ tests, taken in September 1992 when he was nine-years-old, indicated that he had a Verbal IQ of 80, a Performance IQ of 69, and a Full Scale IQ of 72, [Tr. 412], and that he showed "strong signs of a learning disability," [Tr. 415]. But, again, Plaintiff failed to demonstrate in any way how his below average IQ affected his performance of basic work activities. In a more current mental evaluation from November 2005, Speech and Language Pathologist Theronne Singletary, M.S. CCC-SLP, noted that Plaintiff had "good recall of general info," spoke in "complete sentences appropriate to [the] situation," and "easily followed" one stage commands. [Tr. 297]. In addition to being more current, this evaluation was more relevant to the question of whether Plaintiff was mentally capable of performing basic work activities. It was reasonable for the ALJ to rely on this evaluation–instead of Plaintiff's IQ test results from when he was nine-years-old–to determine that Plaintiff did not have a severe mental impairment.

Plaintiff's testimony also failed to show that his alleged mental retardation impacted his

ability to perform basic work activities. Plaintiff testified that he was able to obtain a driver's license, operate a vehicle, train and work on diesel engines, and aid in the raising of his four children. [Tr. 25, 26, 31]. Plaintiff did not offer any testimony indicating that he lacked the mental capacity to (1) see, hear, and speak; (2) understand, carry out, and remember simple instructions; (3) use judgment; (4) respond appropriately to supervision, co-workers and usual work situations; and (5) deal with changes in a routine work setting. See 20 C.F.R. § 404.1521(b). Accordingly, it was reasonable for the ALJ to interpret Plaintiff's testimony as evidence that he did not have a severe mental impairment.

Finally, the record showed that Plaintiff was able to perform several jobs for five years prior to the motor vehicle accident that caused his physical impairments. [Tr. 134]. Plaintiff's work history showed that he had worked as a cook, on an assembly line in a warehouse, and at a service station changing oil and tires. [Tr. 134]. Most significantly, Plaintiff worked as a diesel mechanic for two years. [Tr. 134]. Plaintiff did not allege that the motor vehicle accident adversely affected his mental capacity in any way. Thus, since the evidence showed that Plaintiff was mentally capable of performing basic work activities prior to the accident, it was reasonable for the ALJ to conclude that he could still do so after the accident. Plaintiff failed to produce or point to any evidence that a mental impairment significantly limited his ability to perform basic work activities. Accordingly, the Court concludes that it was appropriate for the ALJ to determine that Plaintiff failed to carry his burden of proof at step two.

Since Plaintiff failed to prove a severe mental impairment at step two, there was no need for the ALJ to move on to step three with regard to mental impairments. See Walters, 127 F.3d at 529. At step three, an ALJ must determine whether a severe impairment meets or medically equals a

listed impairment. See id. As explained *supra*, Plaintiff simply did not establish the existence of a severe mental impairment in this case. Consequently, the ALJ did not need to discuss the listing requirements for mental retardation or any other mental impairment.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[3] that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**, and Plaintiff's Motion for Judgment on the Pleadings **[Doc. 11]** be **DENIED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).